# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| ASHBURN BYWATERS, *et al.*, § § | | |
| Plaintiffs, § § | | |
| v. § | No. 6:99-CV-451 | |
| § | | |
| UNITED STATES OF AMERICA, § | Judge Leonard E. Davis | |
| § | | |
| Defendant. § § § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Memorandum in Support (Docket No. 171) is before the Court. Having considered the parties' submissions, the Court awards attorneys' fees and costs to Plaintiffs in the amount of $453,600.34.

## BACKGROUND

On October 28, 1998, Plaintiffs filed a class action on behalf of themselves and others similarly situated alleging that the United States of America ("United States") took class members' property interests when converting the Chaparral Railroad right of way into recreational trail use under Section 8(d) of The National Trials System Act, 16 U.S.C. §§ 1241–51.[1] On August 3, 1999, the case was transferred to this Court from the United State District Court of Kansas. On August 25, 2000, the Court certified the case as a class action. Docket No. 37. In 2003, the parties filed a Stipulation whereby the

---

[1] A plaintiff seeking to bring a Fifth Amendment takings claim against the United States has a choice of forums. 28 U.S.C. § 1346(a)(2) (the "Little Tucker Act") gives district courts "original jurisdiction, concurrent with the United States Court of Federal Claims" ("CFC") over Fifth Amendment takings claims not exceeding $10,000 in amount, while 28 U.S.C. § 1491(a)(1) (the "Big Tucker Act") gives the CFC exclusive jurisdiction over takings claims exceeding $10,000 in amount. The Federal Circuit maintains exclusive appellate jurisdiction over appeals of takings claims from both the district courts and the Court of Federal Claims. 28 U.S.C. § 1295(a)(2). Plaintiffs brought their claims under the Little Tucker Act.

Unites States conceded its liability.  Docket No. 86.

Over the next six years, the parties cooperated to determine the amount of just compensation owed to class members for claims covered by the liability stipulation.  With the help of a consultant and researcher, LECG (now d/b/a Axxion), and an appraiser, the parties negotiated a Settlement Agreement regarding the amount of just compensation to be paid to the class members.  The Settlement Agreement provided that the total just compensation (i.e., principal plus interest) was $1,241,385.36.  On December 2, 2009, the Court held a final fairness hearing and approved the class action settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23.  Docket No. 167.  On May 17, 2010, the Court entered Final Judgment.  Docket No. 186.  The only issue left to be decided is the amount of Plaintiffs' attorneys' fees and costs Defendant is obligated to pay under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4654(c).

The parties have attempted to agree on the amount of fees and costs reimbursable under the URA but have been unsuccessful.  Plaintiffs' motion requests attorneys' fees and costs for legal work performed by Ackerson Kauffman Fex, PC ("AKF") and Koonz, McKenney, Johnson, DePaolis & Lightfood, L.L.P. ("Koonz").  AKF seeks payment for 1290.91 hours of work over the past ten years and Koonz seeks payment of 828.78 hours of work over almost the same period.  Both law firms' work totals 2,119.68 hours, averaging just over 200 hours per year.  Plaintiffs seek payment of $832,674.99 in fees and $40,578.23 in costs.  Plaintiffs' attorneys have not yet received any compensation for their work on behalf of the class.

**APPLICABLE LAW**

When attorneys' fees are sought against the United States, there must be a waiver of sovereign

immunity. *Nat'l Ass'n of Letter Carriers, AFL-CIO v. United States Postal Serv.*, 590 F.2d 1171, 1179–80 (D.C. Cir. 1978). In this case, the URA is the applicable fee-shifting statute that contains that waiver. *See* 42 U.S.C. § 4654(c). The URA provides that a district court "awarding compensation for the taking of property by a Federal agency, . . . shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." *Id*.

Although the Federal Circuit maintains exclusive appellate jurisdiction over Plaintiffs' takings claim, the parties dispute whether Federal Circuit law or Fifth Circuit law applies to the determination of a reasonable award of attorneys' fees and costs under the URA. When reviewing "questions on appeal involving substantive matters not exclusively assigned to the Federal Circuit," the court's "general practice is to apply to related procedural issues the appropriate regional circuit law." *Chrysler Motors Corp. v. Auto Body Panels of Ohio*, 908 F.2d 951, 953 (Fed. Cir. 1990). However, regional circuit law may apply when the Federal Circuit is "called upon to resolve either procedural or substantive matters that were essential to the exercise of [its] exclusive statutory jurisdiction." *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 857 (Fed. Cir. 1991). Because the URA provides the mechanism through which attorneys' fees and costs may be awarded for a takings claim, and because a determination of fees under the URA is essentially related to the Plaintiffs' taking claim, it follows that the Federal Circuit would apply its own law to issues of whether a URA fee award is proper. *See Swisher v. United States*, 262 F. Supp. 2d 1203, 1206–07 (D. Kan. 2003).

The Federal Circuit uses a lodestar approach for calculating a reasonable attorneys' fee award. *See Avera v. Sec'y of the Dep't of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008);

*Moore v. United States*, 63 Fed. Cl. 781, 785 (2005) ("The lynchpin to calculation of a fee under the URA is the 'lodestar' figure."). A lodestar analysis provides the Court with "[t]he most useful starting point for determining the amount of a reasonable fee" and "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To calculate the lodestar, the Court multiplies the number of hours reasonably expended by a reasonable hourly rate. *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Avera*, 515 F.3d at 1347–48. The reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 & n.11.

"The product of reasonable hours time a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. The Court may consider a variety of subjective factors as set forth in *Johnson v. Georgia Highway Express, Inc*, 488 F.2d 714, 717–19 (5th Cir. 1974),[2] but "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 567 (1986). However, the "'strong presumption' that the lodestar figure is reasonable . . . may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex. Rel. Winn*, — U.S. —, 130 S.Ct. 1662, 1673 (2010). Although "[t]he lodestar method was never intended to be conclusive in all circumstances," "enhancements may be awarded in rare and exceptional circumstances." *Id*. (internal quotes omitted).

---

[2] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Id*.

**ANALYSIS**

**Lodestar Analysis**

*Hours Reasonably Expended*

Plaintiffs have requested that they be reimbursed for 2,220 hours expended by their attorneys. The United States challenges Plaintiffs' request for hours expended by their attorneys related to the filing of an amicus curiae brief by the Texas Farm Bureau, for hours related to title work on claims that were ultimately dismissed, certain duplicative hours, clerical work billed at paralegal rates, and the number of hours spent on Plaintiffs' fee petition. Having reviewed these challenges, the only hours that are unreasonable within the meaning of the URA are the 18.2 hrs spent drafting and filing the amicus brief of the Texas Farm Bureau. In fact, Plaintiffs failed to offer any reasoned rebuttal to the United States' challenge regarding these particular hours. Thus, the Court reduces Plaintiffs' fee petition by 18.2 hours.

*Reasonable Hourly Rate*

Once the number of hours reasonably expended on the litigation is determined, the Court must multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. The first step in determining the reasonableness of the requested rates is to establish the relevant community. The parties dispute the relevant community for purposes of determining a reasonable hourly rate. Plaintiffs' counsel, AKF and Koonz, are both law firms based in Washington D.C. Plaintiffs contend that D.C. market rates should apply because their counsel are based out of D.C. and thus D.C. represents the "community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Blum*, 465 U.S. at 896 & n.11; *Avera*, 515 F.3d at 1347–48. The United States contends that the Eastern District of Texas is the relevant community in this case because it is the community in

which this Court sits. Although this may be the law in the Fifth Circuit, Federal Circuit law is not so restrictive. Accordingly, Plaintiffs' counsel are entitled to reimbursement at D.C. market rates.

The next inquiry is the reasonable hourly rate. The Federal Circuit has held that a reasonable hourly rate may be established by the use of billing surveys. *Mathis v. Spears*, 857 F.2d 749, 756 (Fed. Cir. 1988). Plaintiffs contend the Updated Laffey Matrix accurately reflects the appropriate rates for complex litigation in the D.C. market. The Updated Laffey Matrix is based on a survey of D.C. rates conducted between 1988 and 1989, but has been updated with annual adjustments using an index specific to legal services. Defendants contend the rates calculated in the U.S. Attorney's Office Laffey Matrix ("USAO Laffey Matrix") are more appropriate because they are closer to the attorney billing rates Plaintiffs' counsel sought and obtained in a similar Tucker Act class action. *See Swisher*, 262 F. Supp. 2d at 1214. Having considered the parties' respective arguments regarding the best proof of reasonable D.C. market rates, and considering that both matrices have been accepted in different cases, the Court accepts the Updated Laffey Matrix as adequate proof of D.C. market rates. *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13–15 (D.D.C. 2000) ("[W]hile the [USAO] Matrix has the distinct advantage of capturing data which is specific to the Washington, D.C., metropolitan area, as opposed to the Laffey index which relies on Consumer Price Index data from all over the country, the Laffey index has the distinct advantage of capturing the more relevant data because it is based on the legal services component of the Consumer Price Index rather than the general CPI on which the [USAO] [M]atrix is based.").

Accordingly, multiplying the number of hours reasonably expended by the reasonable hourly rate using the Updated Laffey Matrix, the Court calculates the lodestar figure for reasonable attorneys' fees in this case to be $826,044.19.

**Adjusting the Lodestar Figure**

The Court has discretion in determining the amount of a fee award. *See Hensley*, 461 U.S. at 437. Although the lodestar figure has been held to take into account most of the *Johnson* factors, the Court may consider certain factors that the lodestar analysis did not adequately take into account in determining a reasonable fee. In this case, the "amount involved and results obtained" factor is not adequately taken into account in the lodestar figure. An adjustment is appropriate based on the limited nature of relief obtained by the Plaintiff and extreme discrepancy between the amount of the fee awarded and the results obtained. *See Hensley*, 461 U.S. at 437. The total just compensation (i.e., principal plus interest) provided for in the Settlement Agreement for the Plaintiffs was $1,241,385.36. Docket No. 167. Here, Plaintiffs' attorneys' fees make up approximately 66.5% of Plaintiffs' total award. While this amount is considered "reasonable" under the applicable lodestar analysis, it is extremely high considering the amount at stake in this case and the actual results obtained. In addition, the fee agreement letter between Plaintiffs and their counsel provides:

> By accepting this agreement you authorize us to seek court approval for such attorneys' fees to be calculated either on the value of our professional services at our regular hourly rate or by multiplying by one third the amount recovered for the plaintiff class as damages, whichever is greater.

Engagement Letter, Docket No. 175-2, at 2. Indeed, applying the contingency fee option set forth in the fee agreement letter, Plaintiffs' attorneys' fees in this case would be approximately $413,795 (one-third of the total available compensation for the class of $1,241,385.36). Thus, Plaintiffs' attorneys contemplated that they may only recover one third of Plaintiffs' total recovery. Here, the reasonable fee calculated under the lodestar analysis is twice that amount.

In applying its discretion to determine the amount of a fee award, the Court must take into

account the value of the outcome of the case. Overlooking the large disparity between Plaintiffs' award and the lodestar figure would only encourage protracted litigation and encourage attorneys to litigate for their own benefit, rather than for their client's benefit. Furthermore, although the case went on for a period of ten years, and the hours of work totaled over 2000 hours, most of the labor expended by Plaintiffs' counsel was administrative in nature and did not require a high level of legal skill. This is especially true in light of the United States' stipulation of liability in 2003. After liability was determined, the parties set out to determine the amount of just compensation owed to class members and no further legal issues were argued to the Court. In fact, the only legal issue argued to the Court was the issue of class certification in 2000. After the class certification and the United States' stipulation of liability, the issues involved in this case were neither novel nor difficult. The Court's concern is that this process took over six years to complete, not only drawing out the litigation and delaying Plaintiffs' recovery, but also adding to the attorneys' fees.

The Court recognizes the tedious nature of takings cases and commends the parties on a job well done in getting this matter resolved amicably. However, had the parties resolved this matter expeditiously, the reasonable value of attorneys' fees under the lodestar analysis would have been more in line with the value of the outcome of the case. However, because the lodestar analysis in this case failed to adequately consider the amount involved and the results obtained, the Court reduces the lodestar figure by 50%. Although the Supreme Court has repeatedly counseled against enhancements except in rare and exceptional circumstances, the exceptional nature of this litigation warrants a reduction of the attorneys' fee award to $413,022.10.

**Costs**

The United States only challenges Plaintiffs' request for reimbursement of $3,426.97 for "in

house" copying and "internal copies." Over the course of a ten year litigation, it is not unreasonable for two law firms to incur this amount in copying costs. Thus, Plaintiffs' requested expenses in the amount of $40,578.24 is reasonable.

## CONCLUSION

Thus, the Court awards attorneys' fees and costs to Plaintiffs in the amount of $453,600.34.

**So ORDERED and SIGNED this 12th day of August, 2010.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**